IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                           No. CR 14-3428 JB

LUIS ENRIQUE GUERRA-SOLIS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Plaintiff United States of America's Sentencing Memorandum, filed June 18, 2015 (Doc. 88)("Memo."); and (ii) the Defendant's Objections to the Addendum to the Presentence Report, filed July 17, 2015 (Doc. 92)("Objections"). The Court held a sentencing hearing on July 30, 2015. The primary issue is whether the Court should impose a mitigating role adjustment for Defendant Luis Enrique Guerra-Solis under U.S.S.G. § 3B2.1. The Court will not impose a mitigating role adjustment, because Guerra-Solis has failed to establish by a preponderance of the evidence that he is less culpable than the average participant in this drug-trafficking conspiracy. Accordingly, the Court will overrule the parties' objection to paragraph 23 of the Presentence Investigation Report, disclosed April 8, 2015 ("PSR"), that the United States Probation Office ("USPO") prepared.

## ANALYSIS

The Court has to make factual findings for sentencing. The Court also has to make an independent determination of the defendant's Guidelines range. The Court has a role in making sure the Guidelines calculation has integrity. That role is an important one. The United States

and the defendant may not have an eye towards maintaining the Guidelines' integrity, so the Court must be vigilant to correctly calculate the Guidelines in every case.

The Court will overrule the parties' objection to paragraph 23 of the PSR and will not grant a mitigating role adjustment. Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. n. 3(a). Subsection (b) covers a defendant who "is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n. 5. The Tenth Circuit has held that the inquiry whether a defendant is a minor or minimal participant must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense." United States v. Salazar-Samaniega, 361 F.3d 1271, 1277 (10th Cir. 2004). To receive the adjustment, the defendant has "the burden to prove by a preponderance of the evidence" that he was "less culpable than most other participants." United States v. Ballard, 16 F.3d 1110, 1114-15 (10th Cir. 1994).

The Tenth Circuit has looked to a defendant's knowledge in determining whether a minor- or minimal-role adjustment applies. See, e.g., United States v. Adams, 751 F.3d 1175, 1180 (10th Cir. 2014)(finding the defendant's "knowledge of the scheme" to rob a bank relevant to the determination that he was not a minor participant); United States v. Lockhart, 37 F.3d 1451, 1455 (10th Cir. 1994)(noting that the PSR revealed that the defendant had "knowledge or understanding" of the drug enterprise, and he was thus "not a minimal or minor participant" (emphasis omitted)(internal quotation marks omitted)).

Even if the Court accepts the parties' representations that Guerra-Solis was no more than a mere drug courier, courts around the country -- including the Tenth Circuit -- have uniformly

held that a defendant's alleged status as a courier does not automatically entitle him or her to a downward adjustment under § 3B1.2.  See, e.g., United States v. Harfst, 168 F.3d 398, 402-03 (10th Cir. 1999)("There is no per se rule in this circuit that couriers are minor or minimal participants."); United States v. Santos-Garcia, 313 F.3d 1073, 1081 (8th Cir. 2002)("A role as a courier does not automatically entitle a defendant to a downward adjustment." (citation omitted) (internal quotation marks omitted)); Ajala v. U.S. Parol Comm'n, 997 F.2d 651, 656 (9th Cir. 1993)("[T]he mere fact that a defendant acted as a drug carrier does not mean that [the defendant's] role was minimal or minor." (citation omitted)).  In the Tenth Circuit specifically, courts have been reluctant to grant a downward adjustment based solely upon the defendant's status as a courier.  See United States v. Arrendondo-Santos, 911 F.2d at 426 (holding that the district court did not err in refusing to grant a downward adjustment under U.S.S.G. § 3.B1.2 for a defendant who was a courier)("When a crime is committed by two or more persons, one will almost always have a different level of participation. . . .  The services or contribution of each may be indispensable to the completion of the crime.").  As the Tenth Circuit has noted, couriers are essential participants in a drug-trafficking organization:

> A drug-smuggling operation has many participants; some may purchase, some may transport, some may distribute, and some may sell.  All are indispensable to the operation.  It would be unproductive to debate which function is the more culpable. . . .  The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant.

United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990).  See United States v. Arrendondo-Santos, 911 F.2d at 426 ("Couriers are indispensable to any drug-dealing network.").

The majority of cases within the Tenth Circuit where courts have refused to grant any downward role adjustment for couriers in drug cases are cases in which the defendant's

statements are the sole proof that the defendant had only a minor or minimal role in the criminal activity. See, e.g., United States v. Eckhart, 569 F.3d 1263, 1276-77 (10th Cir. 2009)(holding that the district court's refusal to grant both defendants' requests for downward adjustments under U.S.S.G. § 3B1.2, because of their role as couriers, reasoning that "[t]here is no evidence to support that, apart from their self-serving statements, which the district court could well have found not credible"). In United States v. Michael, 411 F. App'x 167 (10th Cir. 2011) (unpublished),[1] for instance, the Tenth Circuit noted that, in denying the defendant's request for a downward adjustment under U.S.S.G. § 3B2.1, the district court stated that "it had insufficient information to indicate one way or another what [the defendant]'s role was, including whether he was directing or acting at the direction of others." 411 F. App'x at 167. The Tenth Circuit noted that "[t]he sole evidence before the district court was [the defendant]'s own testimony that he was only a courier, which the district court can discredit." 411 F. App'x at 167.

Courts have also been unwilling to grant a downward role adjustment where there is evidence that the alleged courier defendant participated in more than one transaction or was transporting a large quantity of drugs. See United States v. Sayad, 589 F.3d 1110, 1114 (10th

---

[1]United States v. Michael is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that United States v. Michael, United States v. Rivera-Carrera, 386 F. App'x 812 (10th Cir. 2010)(unpublished), and United States v. Garcia-Cardenas, 242 F. App'x 579 (10th Cir. 2009)(unpublished), all have persuasive value with respect to material issues and will assist the Court in its preparation of this Memorandum Opinion and Order.

Cir. 2009)(upholding the district court's denial of the defendant's downward adjustment request for an allegedly minor role "as a mule," noting that "there was no evidence corroborating [the] assertion that [the defendant's] sole involvement was as a mule . . . [and] the large quantity of drugs . . . cast some degree of doubt on the assertion he was just a one-time courier"). In United States v. Rivera-Carrera, 386 F. App'x 812 (10th Cir. 2010)(unpublished), the Tenth Circuit upheld the district court's refusal to grant the defendant's downward-adjustment request for an allegedly minor role, because "[t]rial evidence showed that [the defendant] transported large quantities of methamphetamine[] on more than one occasion." 386 F. App'x at 819. Similarly, in United States v. Garcia-Cardenas, 242 F. App'x 579 (10th Cir. 2009)(unpublished), the Tenth Circuit held that denial of the courier-defendant's request for a downward role adjustment was not improper where the "Defendant's involvement in the ongoing methamphetamine distribution ring prior to his arrest was significant." 242 F. App'x at 582. The Tenth Circuit noted that telephone records and motel records showed that the defendant transported methamphetamine on multiple occasions before his arrest in the case for which he was being sentenced. See 242 F. App'x at 582.

The Court has, in the past, accepted plea agreements that contain stipulations to downward adjustments pursuant to § 3B1.2 for defendants who were couriers in the criminal activity for which they were convicted where the stipulation was to a 2-level downward departure for the defendants' minor role in the criminal activity. See, e.g., United States v. Lewellen, No. CR 11-1524 JB, 2012 WL 2175769, at *4 (D.N.M. June 5, 2012)(Browning, J.)(accepting parties' stipulation and granting 2-level downward adjustment for the defendant's minor role in the criminal activity under U.S.S.G. § 3B1.2 and noting that "[t]he United States asserted that it had no reason to believe that [the defendant] played a larger role than being a

courier"); United States v. Hall, No. CR 11-0067 JB, 2012 WL 592870, at *1 (D.N.M. Feb. 21, 2012)(Browning, J.)(granting a 2-level downward adjustment under U.S.S.G. § 3B1.2, based on the parties' stipulation that role was as a minor participant as "it appear[ed] that the defendant was acting as a courier"); United States v. Colaiezzi, No. CR 09-0592 JB, 2010 WL 5477154, at *2 (D.N.M. Dec. 16, 2010)(Browning, J.)("The Court will accept the stipulation that [the defendant] was a minor participant, because it appears from the information available to the Court that she was not more than a courier."). The Court has also, however, refused to grant courier-defendants' requests to adjust downward for a role adjustment where the Court finds that the defendants' knowledge of the criminal activity counseled against granting the requests. See United States v. Aguilar, 2005 WL 2313585, at *6 (denying the defendant's request for a 4-level minimal role deduction as the defendant knew that she was transporting drugs, but concluding that, because she "did little more than ride along with [her co-defendant] knowing that he was picking up drugs," she was entitled to a 3-level deduction because she was between a minor and minimal participant).

Unlike the defendant in United States v. Aguilar, who was entitled to a 3-level mitigating role reduction, because she "did little more than ride along with [her co-defendant] knowing that he was picking up drugs," 2005 WL 2313585, at *6, Guerra-Solis personally transported a distribution quantity -- 249.3 grams -- of cocaine, see United States v. White, 969 F.2d 681, 684 (8th Cir. 1992)(explaining that 7.54 grams of cocaine is a "distribution quantity"), for Rogelio Gonsalez, which Gonsalez then sold to a confidential informant in exchange for $5,500.00 on September 29, 2014. That Gonsalez trusted Guerra Solis with such a large quantity of drugs and how Guerra-Solis handled those drugs -- concealing them in his pants and then taking them out and hiding them in the trunk -- suggest that this was not the first transaction in which Guerra-

Solis was involved. Guerra-Solis also agreed to assist Gonsalez with unloading a marijuana shipment on May 24, 2014, but was apparently unable to do so only because law enforcement intercepted the shipment. There is also evidence that Guerra-Solis took a Ford Explorer from Gonsalez, so that other individuals could remove the seats and carpets, and wipe down the bare metal inside the car -- actions that indicate they were trying to make hidden compartments or additional room for concealing drugs. See Addendum at 2. Guerra-Solis was involved in conversations suggesting that something at the United States-Mexican border was going to happen, and thereby, result in Guerra-Solis making more money. See Addendum at 2. Guerra-Solis was also heard talking about distributing drugs to others and giving better purity drugs to customers he liked. See Addendum at 2. Individually, these actions may not mean much. Taken as a whole, however, they suggest that the May 24, 2014, transaction was not a one-time occurrence and that Guerra-Solis was closer to an average participant in this organization.

The PSR explains that this is a six-person drug conspiracy, but only summarizes the other participants' roles as follows: "Sergio Aragon-Torres was involved in the sale of methamphetamine he obtained from Alan Arroyo. Oscar Padres-Duran was responsible for the transportation of marijuana and Maria Del Pilar Mendoza was involved in a marijuana drug transaction." PSR ¶ 13, at 5. Ultimately, Guerra-Solis has presented insufficient evidence for the Court to conclude exactly what his role was in relation to the other members of the drug-trafficking organization.

To receive a mitigating role adjustment, the defendant has "the burden to prove by a preponderance of the evidence" that he was "less culpable than most other participants." United States v. Ballard, 16 F.3d 1110, 1114-15 (10th Cir. 1994). Guerra-Solis has not met this standard. The circumstances of this case are closer to United States v. Aguirre-Garcia, No. CR

08-0823 JB, 2009 WL 5851092 (D.N.M. Dec. 15, 2009)(Browning, J.). There, the Court refused to grant the courier-defendant's downward role adjustment where the defendant's knowledge suggested the defendant was not less culpable than the average participant. See 2009 WL 5851092, at *3. The Court noted that the defendant "knew that he was to be transporting drugs and placed the drugs into the vehicle in preparation for the trip in which he was apprehended." 2009 WL 5851092, at *3. The defendant had participated in one previous drug trafficking transaction, transporting drugs from Tucson, Arizona, to Ohio, for which he was paid, and knew that he was transporting drugs when arrested on his second trip. See 2009 WL 5851092, at *1. Although Guerra-Solis participated in one drug transaction rather than two, his other actions -- talking about distributing drugs to others, attempting to help Gonsalez unload a marijuana shipment, and driving a Ford Explorer to have its interior stripped -- suggest that he was just as involved in this conspiracy as the defendant in United States v. Aguirre-Garcia was in that case.

The Court agrees with Guerra-Solis that some of the factors in the Sentencing Commission's proposed amendment to § 3B1.2 cut in favor of granting an adjustment. It is unclear how much Guerra-Solis stood to benefit from the criminal activity. There is no indication that Guerra-Solis participated in planning or organizing the criminal activity. There is similarly no evidence that he exercised decision-making authority or influenced the exercise of decision-making authority in the organization. On the other hand, however, there is evidence that Guerra-Solis understood the scope and structure of the criminal activity. Guerra-Solis transported $5,500.00 worth of cocaine for Gonsalez, he planned to unload a shipment of marijuana for him, he transported a vehicle for Gonsalez to a location where multiple people removed the vehicle's seats and carpet, and wiped down the metal inside the vehicle, and he was overheard talking about distributing drugs to others and giving better purity drugs to customers

he liked.  These are not the actions of a one-time minor or minimal participant in the drug-trafficking organization.  Instead, they demonstrate that Guerra-Solis was available and willing to work when Gonsalez needed to get a variety of things done, like many average members of a drug-trafficking organization.

The Court has considered granting a 2- or 3-level adjustment.  Ultimately, however, Guerra-Solis has not presented sufficient evidence for the Court to conclude that he is any less culpable than the average participant in this organization.  That Guerra-Solis chose to use the admission of facts outlined in his plea agreement and did not provide his version of events to the USPO does not help his case.  To be sure, Guerra-Solis is less culpable than Gonsalez.  Gonsalez directed nearly everything that Guerra-Solis did and it appears that Guerra-Solis had little say in the matter.  That Guerra-Solis acted under Gonsalez' direction does not mean, by default, that he played a minor or minimal role in this organization, however.  If Gonsalez ran this organization, it stands to reason that every average participant in the organization would take orders from him at one time or the other.  Far from diminishing his role in the organization, that Guerra-Solis took orders from Gonsalez directly and worked closely with him on numerous occasions suggests that Gonsalez trusted him, and that they were not casual acquaintances.

It is difficult to define what an average participant in this drug-trafficking organization looks like.  The parties appear to argue that, if an individual does not control others or does not make a considerable amount of money from the drug-trafficking organization, then he must be a minor or minimal player.  The problem with this approach is that most individuals in a drug-trafficking organization do not exercise control over others or make a considerable amount of money from the organization's activities.  Those attributes are reserved for the leaders or managers.  The average participant is, in essence, a foot soldier.  Average participants do what

they are told and make enough money to live. Those in charge can rely on them to perform any number of tasks and they have some sense of the organization's scope.

The other participants in the conspiracy referred to Guerra-Solis as a drug "handyman," which seems a step above a mule or a courier. Without some evidence that other members of the organization did more for Gonsalez than Guerra-Solis -- by, for instance, transporting more drugs or performing more errands -- the Court cannot soundly conclude that Guerra-Solis "is less culpable than most other participants." U.S.S.G. §3B1.2, cmt. n. 5. Accordingly, the Court concludes that a mitigating role adjustment is not warranted in this case.

**IT IS ORDERED** that: (i) Plaintiff United States of America's objection to paragraph 23 of the Presentence Investigation Report, disclosed April 8, 2015 ("PSR"), that the United States Probation Office prepared, in the Sentencing Memorandum, filed June 18, 2015 (Doc. 88), is overruled; and (ii) Defendant Luis Enrique Guerra-Solis' objection to paragraph 23 of the PSR in Defendant's Objections to the Addendum to the Presentence Report, filed July 17, 2015 (Doc. 92), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
  United States Attorney
William J. Pflugrath
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Margaret A. Katze
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*